UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**NORA MAGEE, BELINDA MCDONALD,**

    **Plaintiffs,**

-vs-                                                               Case No. 6:11-cv-209-Orl-19DAB

**MAESBURY HOMES, INC.,**

    **Defendant.**

_____

# ORDER

This case comes before the Court on the Unopposed Motion for Entry of Default Judgment on the Pleadings and Supporting Memorandum of Legal Authority by Plaintiffs Nora Magee and Belinda McDonald. (Doc. No. 11, filed Mar. 17, 2011.)

**Background**

**I. Factual Allegations**

This case concerns contracts for the purchase of condominiums at the Bahama Bay II development in Osceola County, Florida ("Bahama Bay II") by Plaintiffs Nora Magee and Belinda McDonald, residents of the United Kingdom, from Defendant Maesbury Homes, Inc. ("Maesbury"), a Florida corporation. (Doc. No. 1 ¶¶ 3-4.)

On or about August 26, 2004, Magee allegedly executed an Agreement for Sale ("Magee Purchase Agreement") to purchase Unit 2 of Building 41 at Bahama Bay II ("Magee Unit"). (*Id.* ¶¶ 2, 7-8.) A copy of the Magee Purchase Agreement is attached as Exhibit 1 to the Complaint. (Doc. No. 1-1 at 2-15.) Plaintiffs assert that Magee paid Maesbury deposits of 1,000 British Pounds

Sterling (converted to $1,776.10) on or about April 16, 2004, and $41,650.00 on or about August 26, 2004. (Doc. No. 1 ¶ 8.)

On or about August 31, 2004, McDonald allegedly executed an Agreement for Sale ("McDonald Purchase Agreement") to purchase Unit 12 of Building 59 at Bahama Bay II ("McDonald Unit"). (Doc. No. 1 ¶¶ 2, 9-10.) A copy of the McDonald Purchase Agreement is attached as Exhibit 2 to the Complaint. (Doc. No. 1-2 at 2-15.) According to Plaintiffs, McDonald paid Maesbury deposits of 1,000 British Pounds Sterling (converted to $1,747.90) on or about May 12, 2004, and $42,400.00 on or about September 1, 2004. (Doc. No. 1 ¶ 10.)

On December 6, 2007, a certificate of occupancy was allegedly issued for the Magee Unit. (*Id.* ¶ 12.) As of the date of this lawsuit, Plaintiffs assert that no certificate of occupancy has been issued for the McDonald Unit. (*Id.*) Plaintiffs maintain that all conditions precedent to the filing of this action have been performed, waived, or otherwise satisfied. (*Id.* ¶ 15.)

## II. Procedural History

On February 8, 2011, Plaintiffs filed a nine-count Complaint against Maesbury. (Doc. No. 1.) Maesbury was served with process on February 14, 2011. (Doc. No. 8, filed Feb. 22, 2011.) On March 16, 2011, a clerk's entry of default was entered against Maesbury. (Doc. No. 10.) Plaintiffs now move for the entry of default judgment against Maesbury on Counts IV, VIII, and IX of the Complaint. (Doc. No. 11.)

## Standard of Review

The effect of an entry of a default is that all of the factual allegations in the complaint are taken as true, save for the amount of unspecified damages. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). However, a default judgment may not be entered by the Court solely on the basis

of the clerk's entry of default. Rather, the allegations in the complaint must present a sufficient basis to support the default judgment on the issue of liability. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Eagle Hosp. Physicians, LLC v. SGR Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (reviewing whether the well-pled facts stated a claim where the district court ordered a default judgment pursuant to its inherent powers to sanction litigants); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997) ("Regardless of the willfulness of a party's discovery violation, a default judgment cannot stand on a complaint that fails to state a claim."). Thus, prior to entering a default judgment, the court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Where a complaint fails to state a claim, a default judgment on the complaint may not stand. *United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006).

Once liability is established, the court turns to the issue of relief. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. Fed. R. Civ. P. 55(b)(1)-(2); *Eisler v. Stritzler*, 535 F.2d 148, 153-54 (1st Cir. 1976).

## Analysis

Plaintiffs seek a default judgment against Maesbury on the alleged violations of Section 718.202, Florida Statutes, in Count IV, the breach of contract claims in Count VIII, and the declaratory judgment claims in Count IX of the Complaint. (Doc. No. 11 at 4-11.)

### I. Count IV: Violations of § 718.202, Fla. Stat., by Maesbury

In Count IV of the Complaint, Plaintiffs assert that Maesbury withdrew portions of their deposits from escrow in violation of Section 718.202, Florida Statutes. (Doc. No. 1 at 14-16.) That provision states in pertinent part as follows:

> (1) If a developer contracts to sell a condominium parcel and the construction . . . has not been substantially completed . . ., the developer shall pay into an escrow account all payments up to 10 percent of the sale price received by the developer from the buyer towards the sale price. . . .
>
> (2) All payments which are in excess of the 10 percent of the sale price described in subsection (1) and which have been received prior to completion of construction by the developer from the buyer on a contract for purchase of a condominium parcel shall be held in a special escrow account established as provided in subsection (1) and controlled by an escrow agent and may not be used by the developer prior to closing the transaction, except as provided in subsection (3) or except for refund to the buyer . . . .
>
> (3) . . . [T]he developer may withdraw escrow funds in excess of 10 percent of the purchase price from the special account required by subsection (2) when the construction of improvements has begun. He or she may use the funds in the actual construction and development of the condominium property in which the unit to be sold is located. However, no part of these funds may be used for salaries, commissions, or expenses of salespersons or for advertising purposes.
>
> (5) The failure to comply with the provisions of this section renders the contract voidable by the buyer, and, if voided, all sums deposited or advanced under the contract shall be refunded with interest at the highest rate then being paid on savings accounts, excluding certificates of deposit, by savings and loan association in the area which the condominium property is located.

§ 718.202, Fla. Stat.

Plaintiffs allege that prior to the construction of any improvements, Maesbury "withdrew and/or otherwise received from the escrow account all of Plaintiffs' deposit funds, with the exception of the 10 percent of the sales price required to be retained pursuant to Florida Statutes § 718.202(1)." (Doc. No. 1 ¶ 102.)  Plaintiffs further contend that "[a]t the time of the release of Plaintiffs' deposits, construction of improvements for phases 41 and 59 of . . . Bahama Bay II[,] development had not yet begun." (*Id.* ¶ 103.)  Taking these well-pled factual allegations as true due to the entry of default, *Buchanan*, 820 F.2d at 361, Maesbury violated Section 718.202(3) by withdrawing the portions of Plaintiffs' deposits exceeding 10% of the purchase price before the construction of improvements had begun.

Having established that Maesbury violated Section 718.202(3), Plaintiffs are entitled to the remedies set forth in Section 718.202(5), which are rescission of the Purchase Agreements and return of the deposits advanced to Maesbury with interest under Section 718.202(5).  *See Double AA Intern. Inv. Grp., Inc. v. Swire Pacific Holdings, Inc.*, No. 08-23444-CIV, 2010 WL 1258086, at \*\*19, 22 (S.D. Fla. Mar. 30, 2010) (awarding the remedies provided in Section 718.202(5) for a violation of Section 718.202).  Plaintiffs do not specify an interest rate under Section 718.202(5), but instead seek prejudgment interest at the current statutory rate of 6% accruing from the date of execution of the Purchase Agreements. (Doc. No. 11 at 11.)  Generally, where a purchase contract is rescinded by a purchaser due to the seller's violation of law, prejudgment interest is awarded from the date the purchaser paid the deposit at the statutory rate under Section 687.01, Florida Statutes. *See, e.g.*, *Kolter Signature Homes, Inc. v. Shenton*, 46 So. 3d 1211, 1216 (Fla. 4th DCA 2010) (awarding prejudgment interest from the date the purchasers paid their deposit on the purchase agreement rescinded under the Interstate Land Sales Act, 15 U.S.C. § 1701 et seq.) (citing *Leon v.*

*W. Collier Props., Inc.*, 575 So. 2d 1316, 1317 (Fla. 2d DCA 1991)); *Leon*, 575 So. 2d at 1317 (finding that plaintiff was entitled to prejudgment interest at the statutory rate from "when he made the first payment under the agreement for deed to purchase," which was rescinded by the purchaser due to fraudulent misrepresentations by the seller). However, the Florida Legislature has specified a different interest rate for violations of Section 718.202, that being "the highest rate then being paid on savings accounts, excluding certificates of deposit, by savings and loan association in the area which the condominium property is located." § 718.202(5), Fla. Stat. Plaintiffs do not cite, and the Court does not find, any authority permitting an award of statutory interest under Section 687.01 for a violation of Section 718.202. Absent any allegations or evidence of record establishing the interest rate specified in Section 718.202(5), the Court has no basis for awarding interest under Section 718.202 at this time.

Plaintiffs also seek an award of reasonable attorneys' fees and costs under Section 718.125, Florida Statutes. (Doc. No. 11 at 8.) That statute provides as follows:

> If a contract or lease between a condominium unit owner or association and a developer contains a provision allowing attorney's fees to the developer, should any litigation arise under the provisions of the contract or lease, the court shall also allow reasonable attorney's fees to the unit owner or association when the unit owner or association prevails in any action by or against the unit owner or association with respect to the contract or lease.

§ 718.125, Fla. Stat.

Section 718.125 permits an award of attorneys' fees to a "unit owner," not merely a "potential purchaser[]" of a condominium who has contracted to purchase a condominium and prevails against a developer on a dispute arising out of the purchase agreement. *Terraces of Boca Assocs. v. Gladstein*, 543 So. 2d 1303, 1304 (Fla. 4th DCA 1989) (citing *Turnberry Towers Corp. v. Mechoulam*, 425 So. 2d 1180, 1181 (Fla. 3d DCA 1983)). Because Plaintiffs merely contracted

to purchase Bahama Bay II condominiums, (Doc. No. 1 ¶¶ 7, 9), they are not "unit owners" entitled to attorneys' fees under Section 718.125.

## II. Count VIII: Breach of Contract by Maesbury

In Count VIII of the Complaint, Plaintiffs assert that Maesbury breached their respective Purchase Agreements. (Doc. No. 1 at 24-27.) Although Plaintiffs plead several breaches of the Purchase Agreements, (*id.*), they only seek the entry of default judgment for Defendant's alleged failure to timely complete the units. (Doc. No. 11 at 8-9.) Accordingly, the Court will only address that ground for relief.

A breach of contract claim under Florida law consists of three elements: (1) a valid contract; (2) a material breach; and (3) damages. *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). Plaintiffs allege that they executed valid Purchase Agreements for the purchase of Bahama Bay II condominiums from Maesbury, and copies of those Agreements are attached to the Complaint. (Doc. No. 1 ¶¶ 7, 9, 162; Doc. No. 1-1; Doc. No. 1-2.)

Section 11 of each Purchase Agreement provides that before Maesbury can require the purchaser to close, it "must get a temporary (or permanent) certificate of occupancy for or covering the Common Elements of the Condominium and the Unit from the proper governmental agency." (Doc. No. 1-1 at 5; Doc. No. 1-2 at 5.) Section 11 further provides that closing "shall be scheduled within two years of the date of Buyer's execution of this Agreement." (*Id.*) Plaintiffs factual allegations, taken as true due to the entry of default, establish that Maesbury materially breached the Purchase Agreements by failing to obtain certificates of occupancy for the Magee and McDonald Units and failing to close within two years of the execution of the respective Purchase Agreements. (Doc. No. 1 ¶¶ 7, 9, 173.) In light of Maesbury's breach of Section 11 of the Purchase Agreement,

Plaintiffs are entitled to "a refund of all deposits actually paid . . . and the interest earned on them, if any" and their attorneys' fees and costs actually incurred in this proceeding pursuant to Sections 15 and 16 of the Purchase Agreements. (Doc. No. 1-1 at 9; Doc. No. 1-2 at 9.)

Plaintiffs seek costs and attorneys' fees under Section 16 of the Purchase Agreements. (Doc. No. 11 at 9-10.) However, Plaintiffs have not identified the costs under 28 U.S.C. § 1920 that they seek to recover or amount of those costs. In addition, Plaintiffs have not produced any evidence from which the Court can set an award of attorneys' fees. Plaintiffs must supply documentation in support of the actual attorneys' fees being sought. Plaintiffs must also submit evidence, usually by affidavit of a knowledgeable attorney who practices in the field, establishing a "reasonable hourly rate" and that the hours requested for compensation are reasonable. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). A "reasonable hourly rate" means "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.*

To the extent Plaintiffs seek 6% statutory prejudgment interest from the date of their deposits on the breach of contract claim, (Doc. No. 1 at 27; Doc. No. 11 at 11), that relief is not supported by the evidence of record. Section 15 of the Purchase Agreements provides that Plaintiffs are entitled to "a refund of all deposits actually paid . . . and the interest earned on them, if any." (Doc. No. 1-1 at 9; Doc. No. 1-2 at 9.) Contracting parties may contract for a different rate of pre-judgment interest than the statutory default rate, and in such a case, the interest rate set forth in the contract applies. *See Republic Servs., Inc. v. Calabrese*, 939 So. 2d 225, 226 (Fla. 5th DCA 2006) (reversing prejudgment interest award at the statutory rate where the contract specified that interest was to be calculated at LIBOR less fifty basis points); *cf. WPB, Ltd. v. Supran*, 720 So. 2d 1091,

1093 (Fla. 4th DCA 1998) (holding that the statutory interest rate is applied "where the contract is silent on the rate of interest that applies in the event of a default"). Under Section 15 of the Purchase Agreements, Plaintiffs are entitled to a refund of the prejudgment interest that actually accrued on their deposits while in escrow. (Doc. No. 1-1 at 9; Doc. No. 1-2 at 9.) Absent any evidence of how much interest actually accrued, prejudgment interest cannot be awarded on the breach of contract claims at this juncture.

Prior to the entry of judgment, Plaintiffs must elect between recovering on the breach of contract claims and the claims for rescission of the Purchase Agreements. *See First Nat'l Bank of Lake Park v. Gay*, 694 So. 2d 784, 786-87 (Fla. 4th DCA 1997) (holding that a plaintiff asserting claims for rescission and breach of a contract must elect a single remedy "at any time prior to the entry of judgment"); *see also Wynfield Inns v. Edward LeRoux Group, Inc.*, 896 F.2d 483, 488 (11th Cir. 1990) ("Generally, an election between inconsistent remedies is made after a verdict is entered but prior to the entry of judgment.") (citing *Barbe v. Villenueve*, 505 So. 2d 1331, 1333 (Fla. 1987)). Plaintiffs' Motion for Default Judgment is silent on this matter. (Doc. No. 11.) Accordingly, the Court will defer entry of judgment to afford Plaintiffs an opportunity to provide additional evidence of the amount of interest, costs, and attorneys' fees to be awarded and to elect the claim upon which judgment will be entered.

**III.   Count IX: Declaratory Judgment against Maesbury**

In Count IX of the Complaint, Plaintiffs seek a declaratory judgment that the Purchase Agreements have been breached by Maesbury and that Plaintiffs are entitled to the return of their deposits plus interest. (Doc. No. 1 at 28.) The Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In deciding whether to entertain a declaratory judgment action, district courts are provided "ample" discretion. *See Kerotest Mfg., Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952) (noting that "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts" in adjudicating declaratory judgment claims); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) ("The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so." (quoting 28 U.S.C. § 2201(a)).

District courts may decline to grant declaratory relief if another claim in the same case resolves all the issues presented by the declaratory judgment claim. *See, e.g.*, *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1374-75 (M.D. Fla. 2008) (declining to adjudicate a declaratory judgment claim where the parties' rights would be fully decided by the pending trademark infringement claim). Because Plaintiffs seek a declaratory judgment that they are entitled to the same relief available under their Section 718.202 and breach of contract claims discussed above, the Court declines to enter a declaratory judgment in this case.

**Conclusion**

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that ruling on the Motion for Entry of Default Judgment on the Pleadings and Supporting Memorandum of Legal Authority by Plaintiffs Nora Magee and Belinda McDonald (Doc. No. 11) is **DEFERRED**. Within fourteen (14) days from the date of filing of this Order, Plaintiffs shall file a supplemental memorandum of law with evidentiary support addressing:

1) The amount of interest to be awarded on Counts IV and VIII of the Complaint;

2) The amount of attorneys' fees and costs sought under Section 16 of the Purchase Agreements; and

3) Whether Plaintiffs elect the remedies provided under Count IV or VIII.

Should Plaintiffs fail to file a supplemental memorandum of law with supporting evidence as directed by this Order, the Court will enter judgment in favor of Plaintiffs and against Defendant Maesbury Homes, Inc. in accordance with this Order solely in the amount of the Plaintiffs' deposits.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 23, 2011.

*Patricia C. Fawsett*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party