**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NORA MAGEE, BELINDA MCDONALD,**

           **Plaintiffs,**

**-vs-**                                **Case No.  6:11-cv-209-Orl-19DAB**

**MAESBURY HOMES, INC.,**

           **Defendant.**
_____

## ORDER

This case comes before the Court on the following:

1.     Unopposed Motion for Entry of Default Judgment on the Pleadings and Supporting Memorandum of Legal Authority by Plaintiffs Nora Magee and Belinda McDonald (Doc. No. 11, filed Mar. 17, 2011);

2.     Order Deferring Ruling on Plaintiffs' Unopposed Motion for Entry of Default Judgment (Doc. No. 12, filed Mar. 23, 2011);

3.     Omnibus Election of Remedies, Response to Order, and Supporting Memorandum of Legal Authority by Plaintiffs Nora Magee and Belinda McDonald (Doc. No. 13, filed Apr. 6, 2011); and

4.     Proposed Bill of Costs by Plaintiffs Nora Magee and Belinda McDonald (Doc. No. 14, filed Apr. 6, 2011).

## I.  Factual Allegations

This case concerns contracts for the purchase of condominiums at the Bahama Bay II development in Osceola County, Florida ("Bahama Bay II") by Plaintiffs Nora Magee and Belinda

McDonald, residents of the United Kingdom, from Defendant Maesbury Homes, Inc. ("Maesbury"), a Florida corporation.  (Doc. No. 1 ¶¶ 3-4.)

On or about August 26, 2004, Magee allegedly executed an Agreement for Sale ("Magee Purchase Agreement") to purchase Unit 2 of Building 41 at Bahama Bay II ("Magee Unit").  (*Id.* ¶¶ 2, 7-8.)  A copy of the Magee Purchase Agreement is attached as Exhibit 1 to the Complaint. (Doc. No. 1-1 at 2-15.)  Plaintiffs assert that Magee paid Maesbury deposits of 1,000 British Pounds Sterling (converted to $1,776.10) on or about April 16, 2004, and $41,650.00 on or about August 26, 2004.  (Doc. No. 1 ¶ 8.)

On or about August 31, 2004, McDonald allegedly executed an Agreement for Sale ("McDonald Purchase Agreement") to purchase Unit 12 of Building 59 at Bahama Bay II ("McDonald Unit").  (Doc. No. 1 ¶¶ 2, 9-10.)  A copy of the McDonald Purchase Agreement is attached as Exhibit 2 to the Complaint.  (Doc. No. 1-2 at 2-15.)  According to Plaintiffs, McDonald paid Maesbury deposits of 1,000 British Pounds Sterling (converted to $1,747.90) on or about May 12, 2004, and $42,400.00 on or about September 1, 2004.  (Doc. No. 1 ¶ 10.)

On December 6, 2007, a certificate of occupancy was allegedly issued for the Magee Unit. (*Id.* ¶ 12.)  As of the date of this lawsuit, Plaintiffs assert that no certificate of occupancy has been issued for the McDonald Unit.  (*Id.*)  Plaintiffs maintain that all conditions precedent to the filing of this action have been performed, waived, or otherwise satisfied.  (*Id.* ¶ 15.)

## II.  Procedural History

On February 8, 2011, Plaintiffs filed a nine-count Complaint against Maesbury.  (Doc. No. 1.)  Maesbury was served with process on February 14, 2011.  (Doc. No. 8, filed Feb. 22, 2011.) On March 16, 2011, a clerk's entry of default was entered against Maesbury.  (Doc. No. 10.)  On

March 17, 2011, Plaintiffs moved for the entry of default judgment against Maesbury on Counts IV, VIII, and IX of the Complaint.  (Doc. No. 11.)

On March 23, 2011, the Court entered an Order ("March 23 Order") deferring ruling on Plaintiffs' Motion for Default Judgment and directing Plaintiffs to file a supplemental memorandum of law with evidentiary support addressing: (1) the amount of interest to be awarded on Counts IV and VII of the Complaint; (2) the amount of attorneys' fees and costs sought under Section 16 of the Purchase Agreements; and (3) whether Plaintiffs elect the remedies provided under Count IV or VIII.  (Doc. No. 12 at 10-11.)  On April 6, 2011, Plaintiffs filed an Memorandum as directed by the March 23 Order, (Doc. No. 13), and a Proposed Bill of Costs, (Doc. No. 14).

## Standard of Review

The effect of an entry of a default is that all of the factual allegations in the complaint are taken as true, save for the amount of unspecified damages.  *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).  However, a default judgment may not be entered by the Court solely on the basis of the clerk's entry of default.  Rather, the allegations in the complaint must present a sufficient basis to support the default judgment on the issue of liability.  *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Eagle Hosp. Physicians, LLC v. SGR Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (reviewing whether the well-pled facts stated a claim where the district court ordered a default judgment pursuant to its inherent powers to sanction litigants); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997) ("Regardless of the willfulness of a party's discovery violation, a default judgment cannot stand on a complaint that fails to state a claim.").  Thus, prior to entering a default judgment, the court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default,

actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Where a complaint fails to state a claim, a default judgment on the complaint may not stand. *United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006).

Once liability is established, the court turns to the issue of relief. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. Fed. R. Civ. P. 55(b)(1)-(2); *Eisler v. Stritzler*, 535 F.2d 148, 153-54 (1st Cir. 1976).

**Analysis**

**I.  Election of Remedies - Breach of Contract Claim**

In the March 23 Order, the Court directed Plaintiffs to elect between recovering on the claims under § 718.202, Florida Statutes, in Count IV or the breach of contract claims in Count VIII of the Complaint. (Doc. No. 12 at 9.) Plaintiffs have elected to recover on the breach of contract claims in Count VIII. (Doc. No. 13 at 1.)

The Court determined in the March 23 Order that Plaintiffs factual allegations, taken as true due to the entry of default, establish that Maesbury materially breached Section 11 of the Magee and McDonald Purchase Agreements. (Doc. No. 12 at 7.) The Court also held that Plaintiffs are entitled to "a refund of all deposits actually paid . . . and the interest earned on them if any" and their attorneys' fees and costs actually incurred in this proceeding pursuant to Sections 15 and 16 of the

Purchase Agreements. (*Id.* at 7-8.) The Court will now proceed to determine the amount of interest, attorneys' fees, and costs to be awarded to Plaintiffs.

## II. Interest

Plaintiffs assert that because no interest rate is specified in the Purchase Agreements, the Purchase Agreements are not special contracts, and the statutory prejudgment rate of interest should be applied here. (Doc. No. 13 at 1-4.) The Court agrees.

Under Section 687.01, Florida Statutes, the statutory rate of prejudgment interest shall apply "[i]n all cases where interest shall accrue without a special contract for the rate thereof." A "special contract" under Section 687.01 is an "express contract . . . whose provisions are expressed and not dependent on implication." *WPB, Ltd. v. Supran*, 720 So. 2d 1091, 1092 (Fla. 4th DCA 1998) (internal quotation omitted). Like the contract in *Supran* to which the statutory prejudgment interest rate was applied, *id.* at 1093, the Purchase Agreements do not specify an interest rate. (Doc. No. 1-1 at 9; Doc. No. 1-2 at 9.) Thus, the Purchase Agreements are not special contracts, and the statutory prejudgment rate of interest applies. *See Supran*, 720 So. 2d at 1093 ("There was no 'special contract,' no explicit contractual provision fixing the rate. Section 687.01 therefore determines the rate of interest."). Plaintiffs are entitled to prejudgment interest at the statutory rate of 6.0% from the dates of their respective deposits. *See Loizou v. Lake Austin Props. I, Ltd.*, No. 6:09-cv-1483-ACC-KRS, Doc. No. 1-1 at 2; Doc. No. 1-2 at 9, Doc. No. 79 at 1 (awarding prejudgment interest at the statutory rate of 6.0% from the date of the buyer's deposit where a seller defaulted under a purchase agreement with the same relevant provisions as the Magee and McDonald Purchase Agreements).

### III.  Attorneys' Fees

Plaintiffs also request attorneys' fees pursuant to Section 16 of the Purchase Agreements. (Doc. No. 13 at 4-5.)  "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).  An applicant may meet this burden by setting forth direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates.  *Id.* at 1299.  In addition, the Court may use its own expertise and judgment to independently assess the reasonable value of an attorney's services.  *Id.* at 1303.

The starting point in determining reasonable attorneys' fees is the lodestar, which is "calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  *Blum v. Stenson*, 465 U.S. 886, 888 (1984).  A reasonable hourly rate is based upon "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (quoting *Norman*, 836 F.2d at 1299).  In calculating what hours were reasonably expended on litigation, the Court should exclude excessive, unnecessary and redundant hours, and also exclude the time spent litigating "discrete and unsuccessful claims."  *Duckworth*, 97 F.3d at 1397.  "After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained."  *Norman*, 836 F.2d at 1302.

#### A.  Reasonable Hourly Rate

In support of establishing a reasonable hourly rate for attorney and paralegal time, Plaintiffs submit the affidavit of Mario Antonio Garcia, a member of the Florida Bar who handles

preconstruction contract termination cases and who has no financial interest in the law firm of Plaintiffs' counsel or this case.  (Doc. No. 13-3 ¶¶ 1-2, 4.)  Based on his review of this case and his knowledge of the rates charged by Orlando attorneys in similar cases, Garcia opined that a reasonable rate would be $250.00 to $400.00 per hour for an attorney's time and $50.00 to $100.00 per hour for paralegal time.  (*Id.* ¶ 5.)  Garcia remarked that he, a member of the Florida Bar for over 20 years, has charged up to $300.00 per hour for his time in preconstruction contract termination and deposit return cases.  (*Id.* ¶¶ 1, 5.)  In addition, Garcia lauded the skill and experience of Plaintiff's counsel, John L. Urban, in preconstruction contract termination and deposit return cases.  (*Id.* ¶ 4.)

Plaintiffs also submit an affidavit of Urban in support of the request for attorneys' fees. Urban, a shareholder in the law firm of Urban Thier Federer & Jackson, P.A. ("UTFJPA"), has been a member of the Florida Bar since 1999.  (Doc. No. 13-1 ¶ 1.)  According to Urban, he has been the lead attorney on over 300 preconstruction contract termination and deposit refund cases in the Middle District of Florida since January 1, 2008, and UTFJPA enjoys a reputation for being one of the most active law firms in this area of practice in this District.  (*Id.* ¶ 4.)  Urban asserts that he routinely charges between $400.00 and $500.00 per hour on "hourly matters," and that since January 1, 2009, he has not been lead counsel on any case where he has billed less than $400.00 per hour. (*Id.* ¶ 5.)  In addition, paralegals at UTFJPA are billed at $75.00 to $100.00 per hour according to Urban.  (*Id.*)  Urban submits that reasonable compensation for this matter is $400.00 per hour for his time and $75.00 per hour for paralegal time.  (*Id.*)

Based on the affidavits of Garcia and Urban and the Court's own expertise and judgment regarding attorneys' fees, *Norman*, 836 F.2d at 1299, 1303, the Court finds that $400.00 per hour for Urban's time and $75.00 per hour for paralegal time are reasonable rates for work on this case.

### B. Hours Reasonably Expended

Plaintiffs seek an award of attorneys' fees for 17.5 hours of Urban's time and 9.9 hours of paralegal time. (Doc. No. 13-2 at 2-5.) Based on the detailed time entries of the UTFJPA billing records attached to Urban's affidavit, (Doc. No. 13-1 ¶ 6; Doc. No. 13-2), Garcia's assertion that this case reasonably would involve 20 hours of attorney time and 10 hours of paralegal time, (Doc. No. 13-3 ¶ 6), and the Court's own assessment of the time reasonably required to litigate this matter, the Court finds that the time entries reflected in the UTFJPA billing records are not "excessive, redundant or otherwise unnecessary." *Norman*, 836 F.2d at 1301. Accordingly, Plaintiffs may recover for 17.5 hours of Urban's time and 9.9 hours of paralegal time. *See, e.g.*, *Blishir v. Chase Home Fin., LLC*, No. 8:07-CV-65-T-27MAP, 2008 WL 533881, at *2 (M.D. Fla. Feb. 27, 2008) (finding that a reasonable time spent litigating to default judgment was 18.4 hours of attorney time and 1 hour of paralegal time).

### C. Calculation and Adjustment of the Lodestar

The lodestar is determined by multiplying the reasonable hourly rate by the hours reasonably expended. *Norman*, 836 F.2d at 1302. Based on 17.5 hours of Urban's time at the rate of $400.00 per hour and 9.9 hours of paralegal time at the rate of $75.00 per hour, the lodestar in this matter is $7,742.50.

After calculating the lodestar, the court must "consider the necessity of an adjustment for results obtained." *Norman*, 836 F.2d at 1302. Given that the lodestar is less than one tenth of the total deposits that Plaintiffs are entitled to recover from Maesbury under the Purchase Agreements, the lodestar will not be adjusted in this case. *See Frazier v. Absolute Collection Serv., Inc.*, - - F. Supp. 2d - - -, 2011 WL 529997, at *8 (N.D. Ga. 2011) (declining to adjust the lodestar where the

result was typical and the plaintiff prevailed due to the defendant's default for failure to defend). Accordingly, Plaintiffs are entitled to $7,742.50 in attorneys' fees.

The UTFJPA billing records submitted by Plaintiffs show that $5,070.00 of the attorneys' fees were billed to Magee and $2,672.50 of the attorneys' fees were billed to McDonald.  (Doc. No. 132- at 2-5.)  The Court will apportion the award of attorneys' fees accordingly.

## IV. Costs

Plaintiffs seek to recover $350.00 in filing fees and $25.00 for the service of the Complaint on Defendant.  (Doc. No. 14 at 1.)  These costs are properly recoverable by Plaintiffs as the prevailing parties pursuant to Section 16 of the Purchase Agreements and 28 U.S.C. § 1920.  (Doc. No. 1-1 at 9; Doc. No. 1-2 at 9.)  Absent any evidence of record indicating which Plaintiff incurred the recoverable costs, the Court will apportion the costs award to Plaintiffs equally.

## Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Unopposed Motion for Entry of Default Judgment on the Pleadings and Supporting Memorandum of Legal Authority by Plaintiffs Nora Magee and Belinda McDonald (Doc. No. 11) is **GRANTED**.  The Clerk of Court shall enter judgment as follows:

Judgment in favor of Plaintiff Nora Magee and against Defendant Maesbury Homes, Inc. Shall be entered in the following amounts: $43,426.10 in damages, plus 6.0% prejudgment interest accruing thereon from August 26, 2004 until the date judgment is entered in this case, plus attorneys' fees in the amount of $5,070.00, plus costs in the amount of $187.50, all with interest accruing from and after the date final judgment is entered at the rate provided by law.

Judgment in favor of Plaintiff Belinda McDonald and against Defendant Maesbury Homes, Inc. shall be entered in the following amounts:  $44,147.90 in damages, plus 6.0% prejudgment interest accruing thereon from September 1, 2004 until the date judgment is entered in this case, plus attorneys' fees in the amount of $2,672.50, plus costs in the amount of $187.50, all with interest accruing from and after the date final judgment is entered at the rate provided by law.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on April 15, 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party